**UNITED STATES of America,**

v.

**Arthur GARDINER.**

**Crim. No. 85–00016–01 B.**

United States District Court, D. Maine.

July 27, 1987.

---

Jay P. McCloskey, Asst. U.S. Atty., Bangor, Me., for petitioner.

Richard Violette, Brewer, Me., and Jay Sweet, Auburn, Me., for respondent.

## ORDER DISMISSING IN PART PETITIONER'S MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

GENE CARTER, District Judge.

### I.

On January 25, 1985 Petitioner was indicted on one count of cocaine distribution in violation of 21 U.S.C. § 841(a)(1) (1982). Petitioner pled guilty on April 8, 1985 and was sentenced to a twelve-year prison term on July 3, 1985.

Petitioner has moved pursuant to 28 U.S.C. § 2255 (1982)[1] to "vacate and set

---

1. Section 2255 provides, in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming

aside the ... verdict of guilty entered by the court on July 3, 1985." Defendant's Motion at 1. Petitioner raises two arguments: first, that his plea of guilty was entered unintelligently because he was not fully apprised of the consequences of the guilty plea; and second, that the failure of his court-appointed counsel to perfect his appeal denied him his "statutory right of appeal." *Id.* The Court will consider each argument in turn.

## II.

■ Petitioner first argues that he was not aware when he pled guilty that the Parole Commission, in setting guidelines for his release, would or could use alleged crimes that had never been adjudicated to increase Petitioner's "severity category" and thus assign a later parole date. Petitioner claims that the failure to advise him of this possibility violates Rule 11 of the Federal Rules of Criminal Procedure.[2]

The Government suggests, in response to Petitioner's motion, that Petitioner's argument must be construed as a claim that his guilty plea was involuntary and therefore "otherwise subject to collateral attack" under section 2255. The Government then asserts that such an argument must fail because a collateral attack on a plea as involuntary cannot be sustained if the requirements of Rule 11 have been met.

Petitioner's argument can be characterized as the Government suggests, and the Court agrees that any argument based on the involuntariness of the guilty plea is without merit. Rule 11, which establishes a procedure designed to ensure that a guilty plea is entered voluntarily, requires only that the court inform a defendant of the *direct* consequences of a guilty plea; the court need not explain the possible *collateral* consequences of a guilty plea. *E.g., United States v. Suter,* 755 F.2d 523 (7th Cir.), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985); *United States v. Campbell,* 778 F.2d 764, 766–67 (11th Cir.1985); *George v. Black,* 732 F.2d 108, 110 (8th Cir.1984); *Hill v. Lockhart,* 731 F.2d 568, 570 (8th Cir.1984); *Brown v. Perini,* 718 F.2d 784, 788 (6th Cir.1983); *United States v. Russell,* 686 F.2d 35, 38–39 (D.C.Cir.1982). Although it is not always a simple matter to distinguish direct from collateral consequences, at least two circuits have held that matters involving parole eligibility are collateral consequences that need not be explained to a defendant. *Hill v. Lockhart,* 731 F.2d at 570; *Brown v. Perini,* 718 F.2d at 788.[3]

Petitioner does not claim that the Court failed to inform him of any mandatory minimum or maximum possible sentence. Rather, he claims that the Court's failure

the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.

28 U.S.C. § 2255 (1982).

**2.** In relevant part, Rule 11 provides:

(c) *Advice to Defendant.* Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maxi-

mum possible penalty provided by law, including the effect of any special parole term and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense....

(d) *Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.

Fed.R.Crim.P. 11(c)(1), (d).

**3.** Other matters that courts have held to be collateral consequences include the possibility of deportation, *United States v. Campbell,* 778 F.2d at 766–68; *United States v. Russell,* 686 F.2d at 38–39; the range of possible civil penalties or judgments, *United States v. Suter,* 755 F.2d 523; and mandatory mental health commitment proceedings, if commitment is not automatic, definite, or immediate, *George v. Black,* 732 F.2d at 110.

to apprise him of factors that the Parole Commission might consider when setting his parole date violated Rule 11. It is clear to the Court, however, that such a matter involves only collateral consequences, because parole decisions do not represent "definite, immediate [or] largely automatic" consequences of a guilty plea. *See* 2 W. LaFave & J. Israel, *Criminal Procedure* § 20.4(d), at 646 (1984) (footnote omitted). Because Petitioner has made no showing that the Rule 11 requirements were not met, a collateral attack on the plea as involuntary cannot be sustained. *See Marquis v. United States,* 698 F.2d 13, 16 (1st Cir.1983).

### III.

Before moving to Petitioner's second argument, the Court feels compelled to address a second possible characterization of Petitioner's argument.[4] Petitioner's Response to the Government's Opposition suggests that his real argument challenges the constitutionality of the Parole Commission's consideration of "unadjudicated alleged criminal conduct" to enhance a "legally imposed sentence." Response to Government Opposition, para. 1. Petitioner's argument might therefore be that it is unconstitutional to consider evidence that does not meet the "beyond a reasonable doubt" standard when determining a prisoner's parole eligibility.[5]

■ Initially, the Court observes that a challenge to the execution of a sentence—including a challenge to the application of

Parole Commission guidelines—must be made pursuant to 28 U.S.C. § 2241. *Thompson v. United States,* 536 F.2d 459 (1st Cir.1976). "[Section] 2255 does not grant jurisdiction over a post-conviction claim attacking the execution rather than the imposition or illegality of a sentence." *Id.* at 460, citing *United States v. DiRusso,* 535 F.2d 673 (1st Cir.1976). To the extent that Petitioner's claim challenges factors considered by the Parole Commission in setting Petitioner's parole date, the now-pending section 2255 motion fails to confer jurisdiction on this Court to determine that issue. The Court notes also that it would lack jurisdiction in a section 2241 case, because that section imposes the "minimum jurisdictional requisite of the presence of the custodian within the territorial confines of the district court." *DiRusso,* 535 F.2d at 676, citing *Lee v. United States,* 501 F.2d 494, 501 (8th Cir.1974).

■ Even were the Court to consider the merits of Petitioner's argument, Petitioner would not prevail. A review of the federal statutes and regulations governing the United States Parole Commission indicates that the Parole Commission is entitled to consider information from a wide variety of sources when making parole determinations. Section 4207 of Title 18, United States Code authorizes the Commission to consider, among other sources, reports and recommendations made by the staff at the facility where the prisoner is confined, presentence investigation reports, and statements made by the victim of the offense for which the prisoner was convicted.[6]

---

4. Because the Petitioner is proceeding *pro se,* the Court must construe the pleadings liberally in Petitioner's favor. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam).

5. Proof beyond a reasonable doubt is constitutionally required to convict a criminal defendant. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970).

6. The full text of section 4207 reads as follows:
 In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:
 (1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;

(2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;
 (3) presentence investigation reports;
 (4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge;
 (5) a statement, which may be presented orally or otherwise, by any victim of the offense for which the prisoner is imprisoned about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim; and
 (5) [sic] reports of physical, mental, or psychiatric examination of the offender.
 There shall also be taken into consideration such additional relevant information concerning the prisoner (including information sub-

Clearly, the statute does not require that the accuracy of each piece of information considered by the Parole Commission have been established beyond a reasonable doubt.

Section 2.19(c) of Title 28, Code of Federal Regulations also provides that "[t]he Commission may take into account *any substantial information* available to it in establishing the prisoner's offense severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond." 28 C.F.R. § 2.19(c) (1986) (emphasis added). The only mention of any kind of evidentiary standard is made in the context of a prisoner's challenge to the accuracy of information provided. If a challenge is made, the Commission must resolve the dispute by a preponderance of the evidence standard—"that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability." *Id.*

 In the case at bar, Petitioner does not challenge the accuracy of the information considered by the Parole Commission (*i.e.*, Petitioner's prior "unadjudicated" assaults), but only the Commission's right to consider that information. The Commission, however, may consider reports concerning a prisoner's criminal activity that did not lead to arrest or conviction. *Brunnelle v. Kerr*, 557 F.Supp. 969, 976 n. 4 (W.D.Wisc.1983). *See Arias v. United States Parole Comm'n*, 648 F.2d 196, 200 (3d Cir.1981) (parole decision based in part upon presentence report discussing acts related to dismissed indictment and not to offense for which prisoner was convicted

did not violate due process or Commission's rules); *Dye v. United States Parole Comm'n*, 558 F.2d 1376, 1379 (10th Cir. 1977) (Commission may consider factors which could not, for constitutional reasons, be considered by a court of law); *United States v. Stevens*, 559 F.Supp. 1007, 1015 (D.Kan.1983) (same; Commission not obligated to thoroughly investigate accuracy of presentence report when prisoner merely calls it into question).[7]

Finally, the Court notes that Petitioner, at least in his response to the Government, does not appear to challenge the legality of the sentence initially imposed. *See* Response to Government Opposition, para. 1 (Parole Commission relied on "unadjudicated alleged criminal conduct" to enhance a "legally imposed sentence"). To the extent that Petitioner's argument challenges only the Parole Commission's determination of an eligible parole date, the argument is without merit. The Supreme Court has held that subsequent actions taken by the Parole Commission do not retroactively affect the validity of the final judgment and therefore "do not provide a basis for collateral attack on ... sentences pursuant to § 2255." *United States v. Addonizio*, 442 U.S. 178, 190, 99 S.Ct. 2235, 2243, 60 L.Ed.2d 805 (1978). *See United States v. Ferri*, 686 F.2d 147, 158 (3d Cir.1982) (attack alleging defects in Parole Commission's actions but not challenging lawfulness of sentence itself not cognizable issue under section 2255); *United States v. DiRusso*, 535 F.2d 673, 675 (1st Cir.1976) (section 2255 does not provide a vehicle for challenging the execution of a sentence, rather than the imposition or illegality of a sentence).

mitted by the prisoner) as may be reasonably available.
18 U.S.C. § 4207 (1982 & Supp. III 1986).

**7.** The Court recognizes that federal regulations do proscribe consideration of charges upon which a prisoner was found *not guilty* after trial. 28 C.F.R. § 2.19(c) (1986). A finding of "not guilty" is distinguishable, however, from a situation in which the Commission has "substantial information" that represents a reasonable or probable explanation of criminal or tortious conduct, even if such information has

not culminated in an arrest or conviction. Here, there has been no adjudication that Petitioner was "not guilty," and the Parole Commission was entitled to consider "substantial evidence" that Petitioner had committed prior assaults. As long as the Parole Commission's decision is not arbitrary and capricious or an abuse of discretion, the decision must stand. *Dye v. United States Parole Comm'n*, 558 F.2d at 1378. Petitioner has not alleged any facts that would support a finding of arbitrariness or abuse of discretion.

For all of the above reasons, Petitioner's request for section 2255 relief based on the Parole Commission's consideration of Petitioner's "unadjudicated alleged criminal conduct" must be denied.

### IV.

The Court turns now to consider Petitioner's second argument: that the failure of his court-appointed attorney to perfect his appeal denied him his "statutory right to appeal." Petitioner claims that his counsel's failure to perfect the appeal prejudiced Petitioner in three ways: first, it denied him the opportunity to question the disparity between his sentence and that of his codefendant; second, it denied him the opportunity to question the legality of his sentence; and third, it prevented him from requesting a sentence reduction pursuant to Rule 35 of the Federal Rules of Criminal Procedure.[8] Petitioner claims that those circumstances present a violation of his constitutional right to effective counsel.[9]

Petitioner's Rule 35 argument requires little comment. Rule 35, which allows a defendant to move the court for a reduction of sentence, is a remedy independent from the appeals process. The only limitation is time-related: the motion must be filed within 120 days after the sentence is imposed. Petitioner could have filed a Rule 35 motion whether or not he took an appeal. Petitioner does not allege, and makes no showing, that he requested his attorney to file a Rule 35 motion and that his attorney failed to do so. The failure of Petitioner's counsel to perfect his appeal, therefore, did not prejudice Petitioner's right to seek a sentence reduction under Rule 35.[10]

Petitioner's challenge to the illegality of his sentence and the disparity of his sentence compared to that of his codefendant, however, give the Court reason for pause. Those claims could have been raised on appeal, and Petitioner's lost opportunity to do so raises a legitimate question as to the effectiveness of counsel.

The Supreme Court has established the standard for judging attorney performance. To establish ineffectiveness of counsel's assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Although the *Strickland* test as enunciated requires a showing of prejudice, a number of courts have held—without discussing the prejudice issue—that "[a]n attorney's failure to perfect an appeal when the defendant has indicated a desire to appeal constitutes ineffective assistance of counsel." *United States v. Mosiman,* 604 F.Supp. 1003, 1012 (E.D.Wisc.1985), citing *Clay v. Director, Juvenile Div., Dep't of Corrections,* 749 F.2d 427, 431 (7th Cir. 1984); *Hollis v. United States,* 687 F.2d

---

**8.** In relevant part, Rule 35 provides:

> A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Fed.R.Crim.P. 35(b). Rule 35 also provides that a court "may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." Fed.R.Crim.P. 35(a).

**9.** Petitioner's Motion, citing *Kent v. United States,* 423 F.2d 1050 (5th Cir.1970) (per curiam), alleges a "Kent violation." *Kent* held that a defendant was denied effective assistance of counsel when he requested counsel to appeal and that request was not carried out. The Fifth Circuit held that the section 2255 petitioner was entitled to an out-of-time appeal.

**10.** Petitioner did eventually file a Rule 35 motion requesting a sentence reduction; the request was denied as untimely filed. Order Denying Motion for Reduction of Sentence (Mar. 10, 1987).

257, 259 (8th Cir.1982), *cert. denied,* 459 U.S. 1221, 103 S.Ct. 1228, 75 L.Ed.2d 462 (1983). "This rule is applicable not only when the attorney fails to file a timely notice of appeal but also when he does not file an appellate brief." *Mosiman,* 604 F.Supp. at 1012, citing *Clay,* 749 F.2d at 431; *Cannon v. Berry,* 727 F.2d 1020, 1022–25 (11th Cir.1984); *Robinson v. Wyrick,* 635 F.2d 757 (8th Cir.1981) (appellate brief filed was so "flagrantly deficient" as to preserve nothing for review). *Mosiman* and the cases cited therein suggest, by focusing on the constitutional significance of the right to effective counsel and by not discussing the prejudice issue, that an attorney's failure to perfect an appeal constitutes a *per se* violation of the right to effective counsel.

The only First Circuit opinion dealing with effectiveness of counsel when counsel has failed to perfect an appeal is not fully dispositive. *Gardner v. Ponte,* 817 F.2d 183 (1st Cir.1987) was a *habeas corpus* proceeding brought by a state prisoner who had been convicted of second degree murder. The petitioner's trial counsel had filed a notice of appeal but had never followed through, and the appeal was dismissed for failure to prosecute. Through new counsel, the petitioner filed for post-conviction relief under state law. Relief was denied at three levels of the state court system. The petitioner then sought but was denied *habeas* relief in federal district court. On appeal, the First Circuit affirmed, holding "that the state's rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and that his first lawyer's negligence caused him no injury." *Id.*

*Gardner* does not provide a clear answer to whether a defendant must show prejudice (*i.e.,* meet the second prong of the *Strickland* test), when the claim for ineffectiveness of counsel is based upon counsel's failure to perfect an appeal. *Gardner* does establish, however, that post-conviction remedies at the state level can provide an adequate substitute for direct appellate review, so that any prejudice potentially arising from the failure to perfect the appeal is negated.

*Gardner* does not address the situation in the present case, namely, the case of a prisoner convicted of a federal crime in federal court. In the case at bar, Petitioner had no state post-conviction remedies available to him. Analogy to the *Gardner* holding, however, suggests that if the substantive claims that Petitioner would raise on appeal are claims that could be raised in a section 2255 proceeding,[11] then section 2255 would provide an adequate substitute for direct appellate review. In that situation, the adequacy of the remedy would make it unnecessary to determine the legal issue left open in *Gardner.* If, on the other hand, the claims Petitioner would raise on appeal are not claims that could be raised in a section 2255 proceeding, then the Court would have to determine whether counsel's decision not to appeal was objectively reasonable and whether, but for counsel's failure to perfect the appeal, a reasonable probability exists that the proceeding would have had a different outcome.[12]

---

**11.** In a section 2255 proceeding, a prisoner may challenge his or her sentence on any of the following grounds: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court had no jurisdiction to impose the sentence; (3) that the sentence exceeded the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

**12.** The Court indicates, without deciding the issue at the present time, that it finds at least facially persuasive the logic of those courts which have apparently adopted the rule that failure to perfect an appeal constitutes a *per se* violation of the right to effective counsel. It

seems to make little sense to consider the second prong of *Strickland—i.e.,* to ask whether there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's unprofessional errors—when there has been no proceeding at all. The Supreme Court has recognized that due process requires that appellants have effective assistance of counsel on appeals as of right, *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), and that an appeal from a criminal conviction is a matter of right. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Given the constitutional significance of the right to effective counsel, a strong argument

Unfortunately, the record as it presently stands is not sufficient to allow the Court to determine accurately what claims Petitioner would raise on appeal. It is not clear, for example, how a disparity between Petitioner's sentence and that of his codefendant affords Petitioner any cause for relief. Without further explanation, it appears to the Court that Petitioner's disparity argument is actually only another argument for illegality. Yet it is not clear how, or even if, Petitioner challenges the illegality of his sentence. Petitioner's Response to the Government's Opposition claims that the Parole Commission relied on unadjudicated crimes to enhance "a *legally imposed* sentence." Petitioner's Response to Government Opposition, para. 1 (emphasis added). Petitioner's Motion, however, does challenge the legality of the sentence and, specifically, "the multiple sentences of time to be served in prison, and the second sentence of special parole on one (1) count." Petitioner's Motion at 4. Petitioner's allegation, however, is conclusory; it provides the Court with no factual or legal explanation as to why the multiple sentences or special parole term are illegal.

## V.

The Court has determined that a just resolution of this matter requires expansion of the record. *See* 28 U.S.C. § 2255, Rule 7. Specifically, the Court cannot determine on the basis of the present record whether the claims Petitioner would raise on appeal can be raised in a section 2255 proceeding. If those claims are frivolous, then Petitioner would clearly have suffered no prejudice and, under *Strickland,* would not be able to show ineffectiveness of counsel. If those claims are not frivolous and can be raised under section 2255, then Petitioner will be afforded a hearing that will adequately substitute for a direct appeal and Petitioner will again suffer no prejudice. If those claims are

not frivolous and cannot be raised under section 2255, then the Court will have to determine the legal issue left open in *Gardner,* namely, whether failure to perfect an appeal constitutes a *per se* violation of the right to effective counsel; and if not, whether under the circumstances of this case real prejudice has occurred.

The Court recognizes the constitutional concern raised in requiring a *pro se* petitioner to specify the points he would raise were his right to appeal reinstated. *Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969). For that reason, and because the ultimate resolution of this case may well involve a legal question on which there is no controlling precedent, the Court determines that the interests of justice require appointment of counsel at the present time for Petitioner in this matter. *See* 28 U.S.C. § 2255, Rule 8(c); 18 U.S.C. § 3006A(g) (1982).

## VI. CONCLUSION

Expansion of the record is required in the present case to determine whether Petitioner's claim that he was denied effective assistance of counsel has merit. Petitioner is hereby *ORDERED* to supplement the record with information sufficient to allow the Court to determine the legal and factual basis of that claim. In particular, the Court orders Petitioner to elaborate on the substantive nature of the claims Petitioner would raise were his right to appeal reinstated. The Court also requests and orders Petitioner to provide any available information relating to the circumstances of counsel's failure to perfect Petitioner's appeal; any explanation as to why counsel failed to perfect the appeal would be especially relevant. In the event the Court determines any claim Petitioner would raise on appeal to have merit and to be addressable under section 2255, a hearing will be scheduled to

could be made that an attorney's failure to perfect an appeal (at least when the defendant has communicated his or her desire to appeal to counsel) falls below an objective standard of reasonable conduct. The Court also notes that *Strickland* expressly recognized that "[i]n certain Sixth Amendment contexts, prejudice is

presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." 466 U.S. at 692, 104 S.Ct. at 2067. That language, although *dictum,* arguably supports a *per se* rule that failure to perfect an appeal constitutes ineffective assistance of counsel.

resolve that claim. Petitioner shall supplement the record as ordered within sixty (60) days of the date of this Order.

It is also ORDERED that counsel shall be appointed forthwith to assist Petitioner in responding to the Court's Order to supplement the record, and in all other matters related to Petitioner's section 2255 proceeding.

It is further ORDERED that Petitioner's section 2255 Motion be and is hereby DENIED in all respects other than Petitioner's claim that his counsel's failure to appeal constituted ineffective assistance of counsel.